IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **FELLOWS, INC.,**  Plaintiff-Counterclaim Defendant  v.  **ACCO BRANDS CORPORATION,**  Defendant-Counterclaim Plaintiff. | Case No. 10 C 7587 (Consolidated with) Case No. 11 C 8148  Hon. Harry D. Leinenweber |

### MEMORANDUM OPINION AND ORDER

Before the Court are competing Motions to Enforce a Settlement Agreement (ECF Nos. 92 and 98). For the reasons stated herein, these Motions are denied.

### I. FACTUAL BACKGROUND

In November 2010, Fellowes, Inc. ("Plaintiff") filed this suit against ACCO Brands Corporation ("Defendant"), alleging that Defendant had infringed seven of Plaintiff's patents relating to paper shredders. In March 2012, this Court referred the case to Magistrate Judge Susan E. Cox for a settlement conference. Both parties claim they reached an agreement during the resulting settlement conference on June 26, 2012 ("the Agreement"). Pl.'s Mot. Enforce Settlement Ex. D ("Ex. D"), ECF No. 92. The Agreement was memorialized in a one-page handwritten document with seven terms and signed by an attorney and a corporate representative from each party. Many of the terms are expressed in opaque phrases and

have been revised crudely. Term Six states expressly that the whole of the Agreement is "[s]ubject to formal agreement." *Id.* Term Seven says that "[t]he parties will mutually prepare and agree upon lists of accused features and existing products having accused features subject to royalty payments and releases." *Id.*

In the following months, the parties attempted to formalize the Agreement, exchanging drafts and emails, but were unable to agree on final terms. Specifically, the parties disagreed about the scope of two terms. Term Two states, for Plaintiff's U.S. Patent No. 7,631,823 ("the '823 patent"), "3.5% royalty for all past sales of U.S. and foreign patents from May 1, 2010 (Canada, Germany, Australia, China)." *Id.* Term Three says simply, for Plaintiff's U.S. Patent No. 8,010,796 ("the '796 patent"), "3.5%" and "stop manufacturing on Nov. 30, 2012." *Id.*

Plaintiff alleges that Defendant construes terms of the Agreement too narrowly while Defendant argues that Plaintiff construes the same terms too broadly. Both parties now move this Court to enforce the Agreement, albeit with differing views of its terms.

## II. LEGAL STANDARD

Because settlement agreements are contracts, state contract law governs their enforcement. *Zendejas v. Reel Cleaning Servs., Inc.*, 05 C 6933, 2009 WL 2431299 at *8 (N.D. Ill. Aug. 6, 2009). "In interpreting a contract under Illinois law, 'the paramount objective is to give effect to the intent of the parties as

expressed by the terms of the agreement.' . . . Illinois follows the objective theory of intent." *Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614, 618 (7th Cir. 2008) (citations omitted). In Illinois, "a binding agreement requires a meeting of the minds or mutual assent as to all material terms." *Abbott Labs. v. Alpha Therapeutic Corp.*, 164 F.3d 385, 387 (7th Cir. 1999). Material terms are sufficiently definite when they enable the court to ascertain what the parties have agreed to do. *Seko Worldwide, LLC v. Four Soft Ltd.*, 503 F.Supp.2d 1059, 1061 (N.D. Ill. 2007). In addition, "[t]he burden of proving the existence of a settlement agreement rests upon the party seeking to enforce it." *Kemp v. Bridgestone/Firestone, Inc.*, 625 N.E.2d 905, 909 (Ill. App. Ct. 1993).

### III. <u>ANALYSIS</u>

#### A. The Conditional Language of the Agreement

As a foundational matter, the language of the Agreement must be analyzed to see if the intentions of the parties can be determined objectively. *See Zendejas*, 2009 WL 2431299 at *8 (determining whether the parties had a meeting of the minds under Illinois law requires looking to "what they expressed 'to each other and to the world.'") (citations omitted). Here, the words of the Agreement make it clear that the parties agreed on several terms such as royalty percentages and dates.

It is equally clear, however, that the parties did not intend to be bound by the Agreement as it was written. Term Six states expressly and in its entirety that the Agreement is "[s]ubject to formal agreement." The parties' choice to make the Agreement contingent upon a second formal agreement casts doubt on the Agreement's finality and suggests that the parties did not yet intend to be bound.

Term Seven has a similar effect. As noted above, this term indicates that the parties had not yet agreed on both the features of each patent that would incur royalties and which products contained those features. It states that these issues would be negotiated later. While the parties agreed to wait until a later time to decide this matter, it is clear that the Agreement does not show a meeting of the minds on all material terms. Rather, the Agreement on its face evinces the parties' intentions to negotiate key terms further and to delay finalization of a binding contract.

Plaintiff emphasizes that both parties believed, or at least gave the impression that they believed, that a binding agreement had been reached. Under Illinois law, a belief that a binding agreement has been reached is not sufficient to bind the parties without enforceable essential terms. *See, e.g., Quinlan v. Stouffe*, 823 N.E.2d 597, 605 (Ill. App. Ct. 2005). The parties' beliefs that an agreement had been reached do not necessarily indicate that the *same* agreement was in the parties' minds at the time. Accordingly, the Court grants little weight to this

argument. Thus, the Court declines to find that a meeting of the minds had taken place when the Agreement was drafted.

### B. Ambiguity in the Other Terms

Even if the Agreement demonstrated intent to be bound, ambiguity in its terms prevents the Court from enforcing the Agreement. Illinois law provides that the parties' intent "must be determined from the plain and ordinary meaning of the language of the contract, unless the contract is ambiguous. A settlement agreement is ambiguous if it is susceptible to more than one interpretation or if its terms are obscure in meaning through indefiniteness of expression." *Law Offices of Colleen M. McLaughlin v. First Star Fin. Corp.*, 963 N.E.2d 968, 976 (Ill. App. Ct. 2011) (internal quotations and citations omitted). "Where there is an ambiguity and if, after considering the contract language in light of parol evidence and rules of construction, doubt still remains as to the meaning of the contract, then the question of interpretation must be left to the trier of fact." *Countryman v. Indus. Comm'n*, 686 N.E.2d 61, 64 (Ill. App. Ct. 1997).

#### *1. Term Two*

Term Two of the Agreement is limited to the '823 patent. It states, "3.5% royalty for all past sales of U.S. and foreign patents from May 1, 2010 (Canada, Germany, Australia, China)." Ex. D. Plaintiff argues that Term Two should be interpreted as follows: "ACCO will pay a 3.5% royalty on all shredders with '823

- 5 -

features and which were made, used, sold, offered for sale, or imported into the U.S., Canada, Germany, Australia, or China. As of June 26, 2012, ACCO had stopped having shredders manufactured with '823 features worldwide." Pl.'s Reply to Def.'s Mot. 7-8, ECF No. 102. Defendant objects to Plaintiff's use of "made," "imported," "and offered for sale." Def.'s Mem. in Supp. of Cross-Mot. at 8, ECF No. 99.

Term Two of the Agreement only states that a royalty of 3.5% would be imposed on "all past sales of U.S. and foreign patents from May 1, 2010" for Defendant's products accused of infringing the '823 patent. Ex. D. It then lists four countries: Canada, Germany, Australia, and China. *Id.* The lack of definition here invites more than one interpretation. For instance, the countries listed could be the locations of the infringing sales, or the countries in which the patents were issued, or both. The complete lack of verbs in this term's construction reinforces the ambiguity in its meaning.

Plaintiff's attempts to formalize the Agreement after the settlement conference further evidence the lack of clarity in Term Two. The phrase "past sales" is not defined in the Agreement. In its redlined revision to Defendant's draft agreement, Plaintiff defined "past sales" as "Accused '823 Products made, sold, imported, and/or offered for sale." Pl.'s Mot. Enforce Settlement Ex. E at 13, ECF No. 92. As noted above, Plaintiff now defines "past sales" as shredders that were "made, used, sold, offered for

sale, or imported into. . . ." Pl.'s Reply to Def.'s Mot. at 4, ECF No. 102. Clearly, Plaintiff's definitions of "past sales" are more expansive than that which could be anticipated from the Agreement's language itself.

Defendant's position is that the Agreement requires Defendant to pay a 3.5% royalty on all shredders sold in the United States and the four listed countries where Plaintiff has a patent covering the '823 patent's features. Def.'s Mem. in Supp. of Cross-Mot. at 8, ECF No. 99. While this interpretation is closer to the Agreement's text than that suggested by Plaintiff, it is not the only reasonable interpretation of this text. As noted above, the text does not clarify what role the countries play in relation to the past sales. Accordingly, the lack of cognizable syntax in this term precludes the Court from assuming this term's meaning as a matter of law.

### 2. *Term Three*

Term Three states simply that, for the '796 patent, a 3.5% royalty would apply and that Defendant would "stop manufacturing on Nov. 30, 2012." Ex. D. Plaintiff argues that China should be included in the scope of this term, while Defendant contends that this term should be limited to the United States.

Term Three does not specify that the royalty would apply to both U.S. and foreign patents, unlike the previous two terms. This language is also susceptible to more than one interpretation. On one hand, the fact that this term does not specify any geographic

areas could be indicative of its global scope. On the other hand, the prior two terms could have specified that foreign patents were included to extend their scope beyond the default views of the parties, which was that only domestic patents were the norm. This interpretation would limit this term to U.S. patents.

The parties offer essentially these interpretations in their competing Motions. Plaintiff argues that the royalties for the '796 patent should extend to the United States and China, which was the only other country specified as relevant to this patent. Pl.'s Reply to Def.'s Mot. at 4, ECF No. 102 ("The plain language of the Agreement includes no limitations on where the injunction . . . is applicable."). Defendant maintains that the royalties for the '796 patent should be limited to the United States. Def.'s Mem. in Supp. of Cross-Mot. at 11, ECF No. 99 ("The Term Sheet does not contain the kind of worldwide, permanent injunction that Fellowes claims."). Either interpretation of Term Three's geographic scope is reasonable in light of this term's complete lack of detail. Because of this term's inherent ambiguity, the Court declines to adopt either party's position on this term as a matter of law.

Several other factors inform the Court's decision here. The parties submitted to the Court a one-page, handwritten document and ask the Court to do what they could not — create for them terms of a binding settlement agreement. Both parties are sophisticated corporations and both had legal counsel present when this document was drafted. Had the Agreement been drafted with only a minimal

amount of additional forethought and care, this dispute would likely not be before the Court. This drafting, however, was disproportionately unrefined. As such, the Court cannot determine that there was a meeting of the minds here, and that even if there had been, the resulting terms are too ambiguous to enforce.

## IV. CONCLUSION

For the reasons stated herein, the Court denies both Plaintiff's and Defendant's Motions to Enforce the Settlement Agreement (ECF Nos. 92 and 98).

**IT IS SO ORDERED.**

                                                               Harry D. Leinenweber, Judge
                                                               United States District Court

Date:4/24/2013